UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK and BASIL SEGGOS,
as Acting Commissioner of the New York State
Department of Environmental Conservation,

                                  Plaintiffs,

        -against-

PRIDE SOLVENTS & CHEMICAL CO. INC.,
PRIDE SOLVENTS & CHEMICAL CO.
OF N.Y., INC., ARTHUR DHOM, SR., ARTHUR
DHOM, JR., CHERYL DHOM, as executor of
the estate of Robert Dhom, and 78-88 LAMAR
STREET REALTY CORP.,

                                  Defendants.
_____

**COMPLAINT**

Case No. 15-CV-6569

      Plaintiffs State of New York and Basil Seggos, the Acting Commissioner for the New York State Department of Environmental Conservation ("DEC") and Trustee of Natural Resources (collectively, the "State"), by their attorney Eric T. Schneiderman, Attorney General of the State of New York, as and for their complaint, allege as follows:

## NATURE OF THE ACTION

      1.    This action is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA"), as amended, and the common law to recover costs that have been and will be incurred by the State in responding to the release and threatened release of hazardous substances at or from the Pride Solvents & Chemical Co. Inc. site, located at 78 and 88 Lamar Street in West Babylon, Town of Babylon, Suffolk County, New York (hereinafter, the "Site") and damages to natural resources, and to redress harm to the public health and the environment of the State of New York resulting

from Defendants' acts and omissions at the Site.

2. This action seeks (a) recovery of past costs incurred by the State in response to the release and threatened release of hazardous substances into the environment at or from the Site, and (b) a declaration of Defendants' liability for future response costs, natural resource damages, enforcement costs and interest, and costs and expenses that the State has incurred and may incur for work related to the Site including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs.

## JURISDICTION AND VENUE

3. The Site is located at 78 and 88 Lamar Street in West Babylon, Suffolk County, New York.

4. This Court has exclusive jurisdiction over the First Claim for Relief, which arises under the laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 2201 and 42 U.S.C. §§ 9607 and 9613. The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, for the Second Claim for Relief, which is based upon New York statutes and common law and arises out of a common nucleus of operative facts shared with the First Claim for Relief. The Court also has jurisdiction to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 9613.

5. Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because the threatened and actual releases of hazardous substances that give rise to this action occurred and/or are occurring in this District and the Site is located in this District.

## THE PARTIES

6. Plaintiff State of New York, as a body politic and a sovereign entity, brings this action on behalf of itself and as *parens patriae,* trustee, guardian, and representative on behalf

of all residents and citizens of the State of New York, particularly those individuals who live in the vicinity of the Site and Suffolk County, New York, to recover costs that have been, and will be, incurred by the State in responding to the release and threated release of hazardous substances at or from the Site.

7. Plaintiff Seggos, pursuant to CERCLA, 42 U.S.C. § 9607(f)(2)(B) and applicable New York statutory and common law, as Acting Commissioner of the DEC and Trustee of Natural Resources, brings this action to recover damages for injury to, or loss of the State's natural resources.

8. Defendant Pride Solvents & Chemical Co. Inc. is a company organized under the laws of New York with its principal business address at 6 Long Island Ave., Holtsville, New York, that owned and operated chemical and solvent distribution and reclamation facilities at the Site.

9. Defendant Pride Solvents & Chemical Co. of N.Y., Inc. ("Pride Solvents of N.Y.") is a company organized under the laws of New York with its principal business address at 6 Long Island Ave., Holtsville, New York, that owned and operated chemical and solvent distribution and reclamation facilities at the Site. Upon information and belief, Pride Solvents of N.Y. is the successor-in-interest to and/or the alter ego of and/or is otherwise affiliated with Defendant Pride Solvents & Chemical Co. Inc.

10. Defendant Arthur Dhom, Sr., an individual residing at 104 Factory Pond Rd., Locust Valley, New York, is or has been an owner, principal, executive and/or officer of Pride Solvents & Chemical Co. Inc. and Pride Solvents of N.Y. (together, "Pride Solvents"). Arthur Dhom, Sr., managed, directed, and conducted operations related to the disposal of hazardous waste at the Site, and made decisions about compliance with environmental laws and

regulations. Arthur Dhom, Sr., owned the real property at 78 and 88 Lamar Street in West Babylon, Suffolk County, New York, from 1980 to 1994.

11. Defendant Arthur Dhom, Jr., an individual residing at 10 Serene Court, Dix Hills, New York, is or has been a principal, executive and/or officer of Pride Solvents. Arthur Dhom, Jr., managed, directed, and conducted operations related to the disposal of hazardous waste at the Site, and made decisions about compliance with environmental laws and regulations.

12. Defendant Cheryl Dhom, an individual residing at 9 Aron Street, Smithtown, New York, is the executor of the estate of Robert Dhom. Robert Dhom was a principal, executive and/or officer of Pride Solvents. Robert Dhom managed, directed, and conducted operations related to the disposal of hazardous waste at the Site, and made decisions about compliance with environmental laws and regulations.

13. Defendant 78-88 Lamar Street Realty Corp. is a company organized under the laws of New York and has its current place of business at 78 and 88 Lamar Street, West Babylon, New York. Defendant 78-88 Lamar Street Realty Corp. currently owns the Site and has owned it since 1994.

## STATUTORY AND REGULATORY BACKGROUND

14. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that, when there is a release or threatened release of hazardous substances from a facility into the environment, certain categories of persons are liable to the State for (1) the costs that the State incurs to respond to the release or threatened release, including the costs of removal actions and remedial actions, so long as the costs are "not inconsistent with the national contingency plan" and (2) "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release."

15. Section 107(a) of CERCLA sets out four classes of potentially responsible parties: (1) current owners and operators of a facility; (2) any party that owned or operated a facility at the time that hazardous substances were disposed of at that facility; (3) any party that arranged for the disposal, treatment, or transport for disposal or treatment of hazardous substances at the facility; and (4) any party that accepted hazardous substances for transport to the facility. 42 U.S.C. § 9607(a).

16. "Environment," "facility," "hazardous substance," "release," "removal," "remedial action," and "respond," are defined in Sections 101(8), (9), (14), (22), (23)-(25) of CERCLA, 42 U.S.C. §§ 9601(8), (9), (14), (22), (23)-(25).

17. New York's Environmental Conservation Law ("ECL") requires DEC to maintain a Registry of Inactive Hazardous Waste Disposal Sites ("the Registry") in New York State.

## PRIOR PROCEEDINGS

18. On July 2, 2008, the State commenced an action in this Court against Defendants pursuant to CERCLA and New York statutes and common law to recover costs that have been, and will be, incurred by the State in responding to the release and threated release of hazardous substances at or from the Site, and damages for injury to, or loss of the State's natural resources.

19. The matter was captioned *State of New York v. Pride Solvents and Chemical Co. Inc., et al.,* No. CV 08-2661 (LDW) (AKT).

20. On December 10, 2009, the State and Defendants entered into a stipulation to administratively close the matter until May 11, 2010 to pursue settlement.

21. Pursuant to the stipulation, applicable statutes of limitation were tolled and either of the parties had the option of re-opening the matter by filing a letter with the Court no later than May 4, 2010; otherwise the matter would be dismissed without prejudice to refiling at a

5

later date.

22. On June 15, 2010, this Court dismissed the matter without prejudice.

23. Since the dismissal, the State and Defendants have continued to agree to toll applicable statutes of limitations.

## FACTUAL ALLEGATIONS

24. The Site is located at 78 and 88 Lamar Street in West Babylon, New York, and covers approximately 1.3 acres.

25. From in or about 1972 to in or about 2001, Pride Solvents owned and operated chemical and solvent distribution and reclamation facilities at the Site.

26. Pride Solvents received and stored waste solvents and reclaimed the material through a filtration and distillation process that utilized equipment that included tanks, a distillation unit, and a drying column system. This equipment generated wastewater and sludge.

27. Solvents and other chemicals were stored in 55-gallon drums inside and outside buildings at the Site, and in underground and aboveground storage tanks.

28. The Site contains a covered outdoor storage area. Drums were stored both inside and outside that area. The drums stored outside had increased exposure to the environment. Operations related to the reclamation and storage of waste solvents have resulted in the releases of hazardous substances, including tetrachloroethylene ("PCE"), trichloroethene ("TCE"), and 1,1,1-trichloroethane ("TCA"), to the environment. PCE, TCE, and TCA are volatile organic compounds ("VOCs").

29. In addition to operations that resulted in releases, a fire at the Site on or about April 10, 1983 resulted in the rupture of at least six 55-gallon drums containing PCE that was then released into the environment. Approximately 2,000 gallons of contaminated groundwater

and 15 drums of contaminated soil were removed from the Site.

30. On or about June 27, 1983, a forklift accident resulted in drums of waste PCE being spilled. The spill was not cleaned up.

31. PCE, TCE, and TCA have contaminated the soil and groundwater at and emanating from the Site.

32. Contamination also has been identified in soil vapor, which is the air found in the spaces between soil particles, and in indoor air at the Site.

33. PCE, TCE, and TCA, as well as other hazardous substances, have been found in on-site dry wells and storm drains and in on-site soils around and under the former locations of underground and aboveground storage tanks.

34. DEC has listed the Site in the Registry as a "Class 2" site, indicating that it poses a significant threat to the public health or environment and remedial action is required. DEC performed a "Remedial Investigation" in 2000 and a "Focused Remedial Investigation" from 2001 to 2002 in order to, among other things, evaluate the nature and extent of on-site and off-site groundwater contamination, determine if the Site is the source of off-site groundwater contamination, and identify and evaluate remedial measures.

35. In 2008, DEC collected and analyzed additional data during a Remedial Investigation.

36. Based on the results of its investigation and data collected and analyzed in earlier studies, DEC concluded that off-site groundwater contamination originates at the Site.

37. In 2011, DEC performed a "Feasibility Study" to develop and evaluate remedial alternatives to address contamination related to the Site.

38. On October 12, 2012, DEC issued its "Proposed Remedial Action Plan" for the

Site.  The plan outlined the remedial measures DEC proposed for addressing contaminated soil, soil vapor, indoor air, and groundwater at the Site.

39. DEC held a public meeting on January 22, 2013, to discuss and hear comments from the public regarding the proposed remedy.  DEC also received comments from the public during a public comment period that ended on January 30, 2013.  DEC responded to comments in its "Record of Decision" for the Site.

40. In March 2013, DEC issued its Record of Decision for the Site, in which it described its selected clean-up remedy for the Site.

41. In order to address contamination, DEC designated two operable units at the Site.  Operable Unit 1 ("OU1") addresses shallow groundwater and soil down to 20 feet below ground surface.  Operable Unit 2 ("OU2") addresses groundwater deeper than 20 feet below ground surface.

42. DEC's remedy for OU1 is an air sparge/soil vapor extraction system.  This system physically removes contaminants from the groundwater by injecting air into a well that has been installed into the groundwater.  As the injected air rises through the groundwater, it volatizes the VOCs in the groundwater and carries them into an area above the water table but below ground surface, where they are captured by a soil vapor extraction system.

43. DEC's remedy for OU2 is a permeable reactive barrier using enhanced anaerobic bioremediation. This involves creating a barrier that manages the transport of contaminants by either degrading or retaining them as they pass through the barrier.  Bioremediation uses microorganisms that already exist in the substrate to degrade organic contaminants in the groundwater or soil.   This process will be enhanced with necessary nutrients and/or added microorganisms to create the most efficient environment to degrade the organic contaminants.

44. As of August 26, 2015, the State has incurred costs in the amount of approximately $1,991,088.94 in responding to releases at and emanating from the Site.

45. In responding to the release of hazardous substances at the Site, the State has incurred and will continue to incur costs, including costs of investigation, removal, remedial activity, and operation and maintenance.

46. The costs the State has incurred and will incur in the future are not inconsistent with the "National Contingency Plan," 40 C.F.R. Part 300.

47. The release of hazardous substances into the environment at the Site has caused injury to, destruction of or loss of the natural resources of the State as those terms are defined or used in Sections 101(16) and 107(f) of CERCLA, 42 U.S.C. §§ 9601(16) and 9607(f).

### FIRST CLAIM FOR RELIEF
### CERCLA

48. The State hereby incorporates by reference the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

49. The Site is a "facility" as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

50. Structures, equipment, and storage containers where hazardous substances were deposited, stored, disposed of, or placed, or otherwise came to be located at the Site also are "facilities" under Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

51. There have been "releases" or threatened "releases," as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of "hazardous substances," as that term is defined in Section 101(4), 42 U.S.C. § 9601(14), from the Site and other facilities at the Site into the environment.

52. Among the chemicals that were released and that are threatened to be released

into the environment from the Site are hazardous substances that are consistent with operations at the Site that used solvents and generated wastes and that contaminated the "environment," including soils and groundwater, within the meaning of Section 101(8) of CERCLA, 42 U.S.C. §§ 9601(8).

53. The State has incurred costs, and will continue to incur costs, to "respond," as that term is defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to the release and threatened release of hazardous substances at the Site, including costs to assess, monitor, evaluate, oversee and conduct "removal action" and "remedial action," as those terms are defined in Sections 101(23) and (24), 42 U.S.C. §§ 9601(23) and (24).

54. The State's response costs are not inconsistent with the National Contingency Plan, within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

55. Section 107(a) of CERCLA, § 9607(a)(4)(A), provides that persons who are current owners of a facility or were owners or operators at the time that hazardous materials were disposed "shall be liable for . . . all costs of removal or remedial action incurred by ... a State … not inconsistent with the national contingency plan."

56. Defendants are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

57. Defendants other than 78-88 Lamar Street Realty Corp. owned the Site and facilities at the Site when hazardous substances were disposed at the Site, and thus are "owners" of facilities at the time of disposal within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

58. Defendants other than 78-88 Lamar Street Realty Corp. managed, directed or otherwise conducted operations at the Site, including operations specifically related to the

10

acquisition, storage, use and disposal (including leakage) of hazardous substances, when hazardous substances were disposed at the Site and thus are "operators" of the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

59. Defendant 78-88 Lamar Street Realty Corp. currently owns the facility and is a current "owner" of a facility within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

60. Pursuant to CERCLA, 42 U.S.C. § 9607(a), Defendants are strictly, jointly and severally liable to the State for past costs incurred by the State in response to the release or threatened release at or from the Site.

61. Pursuant to CERCLA, 42 U.S.C. §§ 9607 and 9613, Defendants are strictly, jointly and severally liable for future response costs incurred by the State as a result of the release or threatened release of hazardous substances at or from the Site.

62. The release of hazardous substances at and from the Site has caused injury to, destruction of and/or loss of the natural resources of the State within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

63. Pursuant to CERCLA, 42 U.S.C. §§ 9607 and 9613, Defendants are strictly, jointly and severally liable for the State's natural resource damages.

## SECOND CLAIM FOR RELIEF
## PUBLIC NUISANCE

64. The State hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

65. The release of hazardous substances from the Site and their presence in the environment, including groundwater, soil, soil vapor, and indoor air, at and in the vicinity of the Site constitute a continuing public nuisance.

66. Defendants participated in the creation of this continuing public nuisance at and in the vicinity of the Site.

67. The State incurred costs to abate the public nuisance at and in the vicinity of the Site.

68. The public nuisance at and in the vicinity of the Site has injured the State's natural resources.

69. Defendants are liable to the State under the common law of public nuisance and the New York Real Property and Proceedings Law § 841, for all costs, damages, and expenses arising from this public nuisance.

## PRAYER FOR RELIEF

WHEREFORE, the State requests judgment in its favor and against Defendants upon each claim and, further, requests that this Honorable Court enter judgment against Defendants:

70. Declaring Defendants to be strictly, and jointly and severally, liable to the State under CERCLA for, and awarding to the State, all costs and expenses, including interest, attorneys' fees and other costs of enforcement, incurred by the State in responding to the release or threat of release of hazardous substances at or from the Site, and damages to the State's natural resources.

71. Declaring Defendants to be strictly, and jointly and severally, liable to the State under CERCLA for all future response costs and expenses, including interest, attorneys' fees and other costs of enforcement, to be incurred by the State in responding to the release or threat of release of hazardous substances at or from the Site, and future damages to the State's natural resources.

72. Declaring Defendants strictly, and jointly and severally, liable to the State for the

the public nuisance at and in the vicinity of the Site; awarding the State reimbursement of its costs incurred with respect to the Site, and declaring Defendants to be strictly, and jointly and severally, liable to the State for all future costs and expenses, including interest, attorneys' fees and other costs of enforcement to be incurred by the State in responding to the release or threat of release of hazardous substances at or from the Site, for abatement of the public nuisance, and future damages to the State's natural resources.

73. Ordering such other and further relief, in law or in equity, as the Court deems just and proper.

Dated: New York, New York
       November 16, 2015

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York
                              Attorney for Plaintiffs


                      By:   /s/ Nancy M. Christensen
                              Nancy M. Christensen (NC2220)
                              Assistant Attorney General
                              Environmental Protection Bureau
                              120 Broadway
                              New York, NY 10271
                              (212) 416-8464