UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STATE OF NEW YORK and BASIL SEGGOS,
as Acting Commissioner of the New York State
Department of Environmental Conservation,

                    Plaintiffs,

    -against-                              **ORDER ADOPTING R&R**
                                                  15-CV-6569(DRH)(ARL)
PRIDE SOLVENTS & CHEMICAL CO., INC.,
PRIDE SOLVENTS & CHEMICAL CO. OF
N.Y., INC., ARTHUR DHOM, SR., ARTHUR
DHOM, JR., CHERYL DHOM, as executor of
the Estate of Robert Dhom, and 78-88 LAMAR
STREET REALTY CORP.,

                    Defendants.
----------------------------------------------------------X

**HURLEY, Senior District Judge:**

       Presently before the Court is the Report and Recommendation ("R&R"), dated October 30, 2017, of Magistrate Judge Arlene R. Lindsay recommending that the motion by Pride Solvents &Chemical Co. Inc. ("Pride Solvents"), Pride Solvents & Chemical Co. of N.Y., Inc., Arthur Dhom, Sr., Arthur Dhom, Jr., Cheryl Dhom, as Executor of the Estate of Robert Dhom, and 78-88 Lamar Street Realty Corp. (collectively the "Pride Defendants") for leave to file a third-party complaint pursuant to Federal Rule of Civil Procedure ("Rule") 14, be granted in part as it applies to the ten John Does, and denied in part as it applies to the fifty-eight remaining proposed third-party defendants.

       The Pride Defendants timely filed Objections to Judge Lindsay's R&R to the extent that it denies their motion to implead fifty-eight third-party defendants (the "Babylon Settling Defendants") who are signatories to a consent decree associated with a landfill adjacent to the

1

Pride Solvents property. (Def.'s Objections to R&R at 1 (Nov. 13, 2017) (DE 41) (hereinafter "D's Objections").) In response, the State of New York (the "State") and Basil Seggos, Commissioner of the New York State Department of Environmental Conservation (collectively, "Plaintiffs"), filed a Memorandum of Law in Response to the Pride Defendants' Objections, stating that Judge Lindsay correctly denied the motion as it relates to the fifty-eight Babylon Settling Defendants. (Plaintiffs' Mem. in Opp. at 1 (Nov. 27, 2017) (DE 42).)

## BACKGROUND

The following relevant facts are taken from the Parties' submissions.

Pride Solvents operated a chemical solvent reclamation facility at 78-88 Lamar Street in West Babylon, New York (the "Pride Site") from the late 1960's or early 1970's to the early 2000's. (Murphy Aff. ¶ 4 (Apr. 17, 2017).) Adjacent and hydraulically upgradient[1] from the Pride Site is the Babylon Landfill, a municipal landfill and a State superfund site that operated from approximately 1947 to 1993. (Plaintiffs' Mem. of Law in Opp. at 3–4 (May 8, 2017) (hereinafter "Mem. in Opp.").) The State and the town of Babylon entered into a State Assistance Contract, whereby the State agreed to reimburse the town for 75% of eligible clean-up costs for the Babylon landfill. (Murphy Aff. ¶ 7.)

On February 2, 2009, the Pride Defendants entered into a Settlement Agreement with the Babylon Landfill Joint Defense Group based on allegations that some of Pride Solvent's waste was transported to the Babylon Landfill. (Murphy Aff. ¶ 12.) Without admitting liability, the Pride Defendants agreed to cash out for a one-time payment for any past and ongoing response

---

[1] Similar to upstream. Uncontaminated groundwater would be found upgradient of a contamination site.

costs at the Babylon Landfill. (*Id.*) The Settlement Agreement did not extend to "liability for claims of any nature related to any facility other than the [Babylon Landfill] Site[.]" (*Id.*)

As anticipated, the State incurred response costs in addressing the "hazardous substances" at the Babylon Site, so in 2011 the State filed a complaint seeking to recover its costs. (*Id.* at 4.) Simultaneously with the complaint, the State filed the Babylon Consent Decree. This Consent Decree resolved any liability against the Babylon Settling Defendants—a group of entities that either (1) owned or operated the Babylon Landfill, (2) arranged for disposal of hazardous substances at the Babylon Landfill, or (3) transported hazardous substances to the Babylon Landfill for disposal. (*Id.*) Pride Solvents was one of the Babylon Settling Defendants. (Mem. in Opp. at 1; *see also* Babylon Consent Decree, Ex. 1 to Mem. in Opp.)

On November 16, 2015, Plaintiffs brought this action against the Pride Defendants under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a), and state common law to recover costs that have been and will be incurred by the State in responding to hazardous substances released at the Pride Site. According to the Complaint, the Pride Defendants are "potentially responsible parties" ("PRPs") under CERCLA § 107(a), as owners and operators of the Pride Site, and are therefore jointly and severally liable for response costs at the Pride Side.

After being served with the complaint in this action, the Pride Defendants retained Dr. James Knauss of Shield Environmental Associates to "analyze all data in connection with both the Babylon Landfill and the Pride Site." (Murphy Aff. ¶ 18.) Based on his review, Dr. Knauss found:

> [T]he conclusions in the State's remedial investigation report were flawed, were not accurate, drew the wrong conclusions, and were based upon significant mathematical and other gross errors in the application of scientific principles in the

State's reports. Accordingly, he found that the plume originates not from Pride Solvents, but from the Babylon Landfill.

*Id.* The State does not concede that releases of hazardous substances migrated to the Pride Site from the Babylon Landfill. (Mem. in Opp. at 1.)

The Pride Defendants first expressed an intent to join additional parties by letter for a pre-motion conference on October 24, 2016. On April 17, 20176, Pride Defendants brought the instant motion, seeking to implead fifty-eight Babylon Settling Defendants and ten John Does who are alleged to be owners and/or operators of properties located upgradient of the Pride Site. (Proposed Third Party Compl. ¶ 19.) The proposed third-party complaint asserts six causes of action: (1) cost recovery for response costs under CERCLA § 107(a); (2) contribution for response costs under CERCLA § 113(f)(3)(B); (3) a declaratory judgment that the third-party defendants are liable to the Pride Defendants for response costs under CERCLA § 113(g)(2); (4) a state claim for negligence; (5) a state claim for nuisance; and (6) a state claim for trespass. (*Id.* at ¶¶ 33–70.)

Plaintiffs do not oppose the Pride Defendants' motion for leave to implead the John Doe defendants. (Mem. in Opp.at 1.) However, Plaintiffs do oppose the motion insomuch as it seeks to implead the fifty-eight Babylon Settling Defendants on the grounds that these parties were granted contribution protection against any further claims for costs related to releases from the Babylon Landfill. (*Id.*)

## APPLICABLE STANDARD OF REVIEW

### I. Report and Recommendation

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's

disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b). Accordingly, the Court reviews the motion for leave to file a third-party complaint against the Babylon Settling Defendants de novo.

Pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, this Court reviews the unobjected to portions of the R&R for clear error. Finding none, the Court now concurs in both its reasoning and its result. The Court, therefore, adopts the unobjected to portions of the R&R granting leave to file a third party complaint against the ten John Does as if set forth herein.

**II.     Impleader**

Fed. R. Civ. P. 14(a) provides that a defendant may implead a third party "who is or may be liable to it for a claim against it." A defendant is required to obtain the court's leave where, as here, the defendant seeks to implead a third party "more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). However, "the court should freely give leave [for parties to amend their pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y. 1984) ([t]imely motions for leave to implead non-parties should be freely granted to promote efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim.").

Courts in the Eastern District have found that "in determining whether to allow the filing of a third-party complaint, the Court may consider the following factors: '(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." *Crews v. County of Nassau*, 612 F. Supp. 2d 199, 204 (E.D.N.Y. 2009) (quoting

5

*National Westminster Bank PLC v. Empire Energy Management Sys., Inc.*, 93-CV-5331, 1996 WL 709763, at *8 (S.D.N.Y. Dec. 9, 1997)). Here, Plaintiffs do not dispute that the first three factors are met. Therefore, only the fourth factor regarding whether the proposed third-party complaint states a claim upon which relief can be granted, is in contention.

### III. Consent Decrees

The Second Circuit has established that "[c]onsent decrees 'reflect a contract between the parties (as well as a judicial pronouncement), and ordinary rules of contractual interpretation are generally applicable." *U.S. ex rel. Anti-Discrim. Ctr. Of Metro N.Y., Inc. v. Westchester Cty.*, 712 F.3d 761, 767 (2d Cir. 2013) (quoting *Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007)). The Second Circuit further explained that "[t]his requires that 'deference . . . be paid to the plain meaning of the language of a decree and the normal usage of terms selected." *Id.*

In interpreting a consent decree, "a court is constrained to read and apply its terms 'within its four corners' and may not look beyond the document to satisfy one of the parties' purposes." *United States v. Int'l Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 978 F.2d 68, 73 (2d Cir. 1992); *see also Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023, 1028 (2d Cir. 1993) ("While a consent decree is a judicial pronouncement, it is principally an agreement between the parties and as such should be construed like a contract.") The Court may only go beyond the four corners of the consent decree and consider extrinsic evidence of the parties' intent if the terms of the decree are ambiguous. *United States v. County of Nassau*, 733 F. Supp. 563, 566 (E.D.N.Y. 1990) *aff'd*, 907 F.2d 397 (2d Cir. 1990).

The Second Circuit has held that this precedent applies to the interpretation of a CERCLA consent decree. *See U.S. v. Manne*, 510 Fed.Appx. 83, 84–85 (2d Cir. 2013) (citing *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) (finding that the court could not reach the

merits of a claim "because the consent decree bars consideration of [the party's] argument" and "due deference [is] owed to 'plain meaning' of decree's language and to 'normal usage of the terms selected.'")

**DISCUSSION**

As stated above, the single outstanding question before the Court is whether the proposed third-party complaint against the fifty-eight Babylon Settling Defendants states a claim upon which relief can be granted. Here, the Court's sole inquiry is to determine whether the contribution protection granted in the Babylon Consent Decree shields the Babylon Settling Defendants from liability for releases at the Pride Site. For the reasons stated below, the Court finds that the Babylon Consent Decree does protect the Babylon Settling Defendants from liability at the Pride Site, and therefore the Pride Defendants' motion to implead the Babylon Settling Defendants is denied.

**I.     The Parties' Arguments**

In their initial moving papers, the Pride Defendants claim that the Babylon Consent Decree does not protect the Babylon Settling Defendants from liability for releases that have migrated to the Pride Site because "the Babylon Landfill Consent Decree did not expressly include the Pride Solvents Site . . . within the scope of the 'matters addressed.'" (Murphy Aff. ¶ 9.) The Pride Defendants further assert that the Babylon Consent Decree did not contemplate response costs at the Pride Site because the Pride Site has long been defined and identified as a separate site from the Babylon Landfill. (*Id.* at ¶ 11.) The Pride Defendants reference language in the 2009 Settlement Agreement excluding costs for any facility other than the Babylon Landfill as evidence that the Babylon Consent Decree was not intended to extend to the Pride Site. (*Id.* at ¶ 12.) In addition, in their objections to the R&R the Pride Defendants argue that

"CERCLA is a unique statutory scheme, and little guidance can be found for implementing that unique scheme from the interpretation of consent decrees in the context of [other types of claims]." (D's Objections at 12.)

Plaintiffs disagree with the Pride Defendants on the grounds that "the matters addressed in the Babylon Consent Decree include all claims under CERCLA and other laws, including state common law, regarding releases of hazardous substances at the Babylon Landfill, including the migration of those hazardous substances off the landfill." (Mem. in Opp. at 5.) Plaintiffs argue that the Pride Defendants are barred from suing the Babylon Settling Defendants because any releases from the Babylon Landfill that migrated to the Pride Site fall within the scope of Matters Addressed under the Babylon Consent Decree. (*Id.*)

## II. The Babylon Consent Decree

Paragraph 9(c) of the Babylon Consent Decree provides that "matters address" includes:

> [A]ny and all other claims or causes of action under CERCLA and any other federal, state, local or common law relating to the disposal or alleged disposal or release or alleged release of hazardous substances at the Site, including without limitation any release, migration, or disposal on, at, through, under, to or from contiguous or neighboring properties which are associated in any way with hazardous substances or contamination at the Site (which claims collectively are referred to as "Matters Addressed.")

In addition, Paragraph 13 of the Babylon Consent Decree grants contribution protection to the Babylon Settling Defendants regarding the Matters Addressed defined in Paragraph 9:

> The Parties agree, and by entering this Decree the Court finds, that the Settling Defendants and the Town, and their affiliates, subsidiaries, related entities, predecessors, successors and assigns, and their Boards, commissioners, executive directors and elected officials, officers, directors, agents, attorneys, shareholders, and employees, have resolved their liability, including but not limited to liability under CERCLA, to the State and are entitled to the full extent of protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and/or any other applicable federal or state law, for the Matters Addressed by the Decree (as specified in Paragraph 9 of this Decree).

Finally, Paragraph 7 includes a "Release and Covenant Not to Sue" as follows:

> Each Settling Defendant agrees not to assert any claims or causes of action under any federal, state, local or common law against . . . any other Settling Defendant or its affiliates, subsidiaries, related entities, predecessors, successors and assigns, or their past, present and future employees, agents, attorneys, shareholders, officers and directors, or to seek against . . . other Settling Defendants . . . any costs, damages, contribution or attorneys' fees arising out of or relating to any Matters Addressed by this Decree (as specified in Paragraph 9 of this Decree).

As noted above, defendant Pride Solvents is a party to the Babylon Consent Decree. (Mem. in Opp. at 1; *see also* Babylon Consent Decree, Ex. 1 to Mem. in Opp.)

### III. The Proposed Third Party Claims

The plain language of Paragraph 9(c) clearly includes any releases of hazardous substances from the Babylon Landfill that migrates to nearby properties, in the definition of "Matters Addressed." Paragraph 9(c) explicitly provides that Matters Addressed encompasses the "release or alleged release of hazardous substances at the Site, including without limitation any release, migration, or disposal on, at, through, under, to or from contiguous or neighboring properties[.]" Paragraph 9(c) was drafted so broadly that it would cover almost any claim related to a disposal or release that was "associated in any way with hazardous substances or contamination at the Site."

Here, the Pride Defendants claim that all or some of the hazardous substances at and downgradient from the Pride Site are the result of releases from the Babylon Landfill. Assuming this allegation is true, any such release from the Babylon Landfill that migrated to the Pride Site (a "contiguous or neighboring propert[y]") clearly falls within the scope of Matters Addressed. It is inconsequential that the Pride Site is a separately identified/defined site, and that the response costs are not "the same costs." (D's Mem. in Support at 10.) Because the alleged release originated from and is associated with hazardous substances from the Babylon Landfill,

such release is included in the Matters Addressed.  There is no ambiguity in the terms of the Babylon Consent Decree, therefore the Court may not look to extrinsic evidence—such as the 2009 Settlement Agreement—to determine the parties' intent as to whether releases of hazardous substances at or to the Pride Site were meant to be excluded.  *See United States v. County of Nassau*, 733 F. Supp. at 566.

Given that the alleged release is a Matter Addressed under the Babylon Consent Decree, the Babylon Settling Defendants have "resolved their liability" for it pursuant to Paragraph 13, as quoted above.  Moreover, the Pride Defendants may not "assert any claims or causes of action under any federal, state, local or common law" against the Babylon Settling Defendants under Paragraph 7 of the Babylon Consent Decree.  The proposed third-party complaint asserts three federal causes of action and three state causes of action.  All of these are barred under Paragraph 7.  Thus, the Court's inquiry ends here and the motion to implead the fifty-eight Babylon Settling Defendants must be denied.  While this decision may or may not produce an unfair result, courts "may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals."  *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 1985).

The Pride Defendants' secondary argument that CERCLA is a unique statutory scheme to which standard consent decree precedent does not apply, is not convincing.  First, the cases that the Pride Defendants provide from district courts in other circuits are not binding on this court; especially in the face of contrary Second Circuit case law.  Second, as explained above, the Second Circuit has previously cited its own precedent regarding interpreting consent decrees in the context of a CERCLA consent decree.  *See Manne*, 510 Fed.Appx. at 85.  Therefore, the Court cannot allow for a "fact-intensive inquiry to determine what was—and what was not—

'matters addressed'" solely on the basis that the Babylon Consent Decree applies to CERCLA liability. Under the unambiguous terms of the Babylon Consent Decree, any release from the Babylon Landfill to the Pride Site or any other neighboring property is a matter addressed. The Court cannot go on a hunting expedition for alternative interpretations.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 72(b), the Court has reviewed the objected to portions of the R&R de novo, and finds that the Pride Defendants may not implead the fifty-eight Babylon Settling Defendants given the terms of the Babylon Consent Decree. Accordingly, the R&R is adopted as if set forth herein, and the motion for leave to file a third-party complaint is granted insomuch as it applies to the ten John Does, and denied insomuch as it applies to the fifty-eight Babylon Settling Defendants.

Dated: Central Islip, N.Y.
      December 15, 2017

                                            /s/ Denis R. Hurley
                                            Denis R. Hurley
                                            United States District Judge